Filed: February 1, 2012

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 10-2105**
**7:09-cv-00159-BO**

———————————

MARGARET GAYLE HERRING WARREN,

               Plaintiff - Appellant,

     v.

SESSOMS & ROGERS, P.A.; LEE C. ROGERS,

               Defendants - Appellees.

———————————

**No. 10-2155**
**7:09-cv-00159-BO**

———————————

MARGARET GAYLE HERRING WARREN,

               Plaintiff - Appellee,

     v.

SESSOMS & ROGERS, P.A.; LEE C. ROGERS,

               Defendants - Appellants.

———————————

O R D E R

———————————

The Court amends its opinion filed January 11, 2012, as follows:

On page 8, the text of footnote 3 is deleted and is replaced with the following:

> Because we conclude that defendants' offers to compensate Warren for her alleged actual damages did not moot her FDCPA claim, we need not determine whether an offer of attorney's fees "to date" can render such a claim moot.

For the Court – By Direction


/s/ Patricia S. Connor
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARGARET GAYLE HERRING
WARREN,

    *Plaintiff-Appellant,*

    v.        No. 10-2105

SESSOMS & ROGERS, P.A.; LEE C.
ROGERS,

    *Defendants-Appellees.*


MARGARET GAYLE HERRING
WARREN,

    *Plaintiff-Appellee,*

    v.        No. 10-2155

SESSOMS & ROGERS, P.A.; LEE C.
ROGERS,

    *Defendants-Appellants.*


Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(7:09-cv-00159-BO)

Argued: December 6, 2011

Decided: January 11, 2012

Before MOTZ, GREGORY, and FLOYD, Circuit Judges.

Reversed and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Gregory and Judge Floyd joined.

---

**COUNSEL**

**ARGUED:** Anthony J. Majestro, POWELL & MAJESTRO, PLLC, Charleston, West Virginia, for Appellant/Cross-Appellee. Dauna L. Bartley, ELLIS & WINTERS, LLP, Raleigh, North Carolina, for Appellees/Cross-Appellants. **ON BRIEF:** Angela Orso Martin, MARTIN ATTORNEY AT LAW, PLLC, Sanford, North Carolina, for Appellant/Cross-Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Margaret Warren sued the law firm of Sessoms & Rogers, P.A. ("S&R") and attorney Lee C. Rogers (collectively "the defendants"), alleging that they violated the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692 *et seq*. Prior to any discovery, the defendants made Warren an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. When Warren did not accept the offer, the defendants then moved to dismiss this action. They contended that the offer of judgment mooted Warren's case and, in the alternative, that her complaint failed to state a claim upon which relief could be granted. The district court dismissed Warren's complaint, concluding that her allegations failed to "show a material violation" of the Act or that the defendants "knowingly and willfully violated the Act." Warren appeals. For the reasons set forth below, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

## I.

We first set forth the facts alleged in Warren's amended complaint.

Shortly after Warren's husband, Robert Warren, died in March 2006, she learned of the debt at issue in this case: an overdue personal VISA credit card account at Branch Banking & Trust Co. ("BB&T"). When Warren's own attempts to obtain the signature card on the account failed, she enlisted the help of her son-in-law, Russ Gerald, to access the account via online banking. Gerald discovered that the BB&T account listed only Robert Warren's name. However, at some point, BB&T had begun sending Warren statements bearing both her and her husband's names. Under an assertedly mistaken belief that she was obligated to make payments on the account after her husband's death, Warren had begun to make such payments.[1] She eventually ceased these payments.

In February 2009, Warren began to receive communications from S&R, a law firm "engaged in the collection of debts," regarding the BB&T debt. S&R sent her an initial collection letter dated February 24, 2009, which stated that BB&T retained the firm "to assist them in the recovery of the debt that you owe them." The letter informed Warren that she was "in default under the terms of [her] credit agreement," and that the "entire balance [was] due and payable." Additionally, the letter stated that Warren could "dispute this debt" within thirty days of receipt of the letter. The letter advised Warren that it was "an attempt to collect a debt" and that S&R was a "debt collector." Defendant Rogers signed the letter on behalf of S&R.

Warren also alleges that she began to receive phone calls from S&R in regard to the debt in February 2009. Specifi-

---

[1]The debt has since been discharged in an unrelated bankruptcy proceeding.

cally, she alleges that S&R representative, John Harden, left her the following telephone message: "Yes this call is for a Mr. or Mrs. Warren. This is John Harden with Sessoms & Rogers law firm. If you would, please give me a return call as soon as possible." The message provided a call back number but did not identify S&R as a debt collector. At this time, Warren "became afraid to answer her phone, her door or collect the mail."

Warren disputed the debt in a March 7, 2009 letter to S&R. In the letter, she requested verification of the debt. Warren also requested that S&R "[p]lease send all future correspondence, including the verification [that she had] requested directly to [her] attorney" and provided the name and mailing address of her retained counsel. Thereafter, Rogers, on behalf of S&R, sent another collection letter directly to Warren, dated March 17, 2009. This letter began by thanking Warren "for [her] recent letter concerning this account." Upon receipt of this letter, Warren alleges that she "became highly upset, angry, confused, irritated and worried."

On November 16, 2009, Warren filed a one-count amended complaint in federal district court, alleging numerous violations of the Act and seeking a jury trial.[2] Specifically, and most relevant to this appeal, she alleges that the defendants violated 15 U.S.C. § 1692c(a)(2) by "communicating with [her] when they knew she was represented by an attorney and had actual knowledge of her attorney's name and address" and violated § 1692e(11) "by failing to notify [her] in subsequent communications that the communication was from a debt collector." Warren also alleges several other violations of § 1692e based on her contention that S&R used "false, deceptive, or misleading representations or means in connection with the collection of any debt." In her prayer for relief, War-

---

[2]Although Warren alleged state law claims in an earlier complaint, she abandoned those claims in her amended complaint.

ren seeks an award of unspecified actual damages, statutory damages of $1,000, costs, and reasonable attorney's fees.

On December 4, 2009, the defendants filed an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68. The offer provides for "judgment to be taken against" the defendants for the following amounts:

(1)   Actual damages in the amount of $250.00, or an amount determined by the Court upon Plaintiff's submission of affidavits or other evidence of actual damage;

(2)   Statutory additional damages in the amount of $1,001.00;

(3)   Costs of this action accrued to date; and

(4)   A reasonable attorney's fee to date as determined by the Court.

In accordance with Rule 68, the offer provided Warren fourteen days to accept these terms. Warren did not accept the offer.

Thereafter, on December 24, 2009, the defendants moved to dismiss the amended complaint on two grounds. First, they invoked Rule 12(b)(1), contending that Warren's case had "been mooted and must be dismissed for lack of subject matter jurisdiction" because they offered her, pursuant to Rule 68, "all the relief to which" she was entitled. In the alternative, the defendants invoked Rule 12(b)(6), arguing that the court should dismiss Warren's complaint because, since it "adequately alleged only two minor technical violations," both of which resulted from defendants' "bona fide error," it failed to state a claim upon which relief can be granted.

Warren opposed the defendants' motion to dismiss. She maintained that the offer of judgment left "open the amount

of actual damages" and "did not offer [her] all she may have been entitled" including her "right to a jury trial for a determination of her actual damages." Warren further argued that the defendants' claim of "bona fide error" was an "affirmative defense" for which they "bear[ ] the burden of pleading" and proof "by a preponderance of the evidence," and thus provided no proper basis for dismissal under Rule 12(b)(6). Warren attached to her opposition memorandum her own affidavit and those of her daughter and son-in-law attesting to the stress that she endured from the defendants' assertedly illegal debt-collection efforts.

The district court granted the defendants' motion to dismiss in a two-paragraph order, concluding Warren's "allegations do not show a material violation of [the] Act, nor that the defendants knowingly and willfully violated the Act." Warren timely noted this appeal.

## II.

Although the district court did not rule on the defendants' Rule 12(b)(1) motion to dismiss on mootness grounds, we must address this question at the outset, for if Warren's case is moot, we lack subject-matter jurisdiction. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987). This is so because mootness principles derive from Article III of the Constitution, which mandates that federal courts adjudicate only disputes involving "a case or controversy." *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (internal quotation omitted). As a federal court, we must investigate the limits of our subject-matter jurisdiction whenever that jurisdiction is "fairly in doubt." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1945 (2009); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Simmons v. United Mortg. & Loan Inv.,*

*LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (internal quotation omitted). A change in the law can render a case moot. *Id.* Or, a change in factual circumstances can moot a case; for example, "when the claimant receives the relief . . . she sought to obtain through [her] claim," her case becomes moot. *Id.* (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)). Accordingly, we have found "there was no longer any case or controversy" when "defendants had offered [a plaintiff] the full amount of damages" to which the plaintiff claimed entitlement. *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986).

Thus, the initial question in this appeal is whether the defendants' Rule 68 offer of judgment mooted Warren's case. Rule 68 provides that, at least fourteen days before trial begins, "a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). If a plaintiff rejects a Rule 68 offer, she must "pay the costs incurred after the offer was made" if the amount awarded at trial is less than the offer. Fed. R. Civ. P. 68(d). The "plain purpose" of this rule "is to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 5 (1985).

To effectuate the purposes of Rule 68, an offer of judgment "must specify a definite sum or other relief for which judgment may be entered and must be unconditional." *Simmons*, 634 F.3d at 764 (citing 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 3002, p. 92 (2d ed. 1997)). "[T]he plaintiff must know unequivocally what is being offered in order to be responsible for refusing such offer." *Id.* When a Rule 68 offer unequivocally offers a plaintiff all of the relief "she sought to obtain," *Dunlap*, 290 F.3d at 197, the offer renders the plaintiff's action moot. *See, e.g.*, *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 575 (6th Cir. 2009); *Rand v. Monsanto Co.*, 926 F.2d 596, 597-98 (7th Cir. 1991); *Abrams v. Interco, Inc.*,

719 F.2d 23, 32-33 (2d Cir. 1983);    *see also Simmons* , 634 F.3d at 763-64.

The defendants contend that their Rule 68 offer provided Warren with the maximum recovery available to her and thus mooted her case. As Warren conceded at oral argument before us, the Rule 68 offer of judgment did provide her with all possible *statutory* damages. The Act contemplates a maximum recovery of $1,000 in statutory damages in "any *action* by an individual," 15 U.S.C. §  1692k(a)(2)(A)  (emphasis added), and the offer of judgment provided for $1,001 in such damages.[3]

The  Act, however, places no similar statutory cap on a plaintiff's actual damages, *see id.* § 1692k(a)(1), and Warren sought  an unspecified award of actual damages in her amended  complaint. The defendants' Rule 68 offer of judgment  proposed two alternative actual damage awards: (1) $250, or (2) "an amount determined by the Court upon Plaintiff's  submission of affidavits or other evidence of actual damage."  The defendants contend that the offer of these options  moots Warren's action.

### A.

As to the first option, the defendants argue that Warren's "evidence fails to show" that she suffered more than $250 in actual  damages, and thus she has failed to prove that this option did not fully satisfy her demand. Appellee's Br. at 26. Accordingly,  they maintain, Warren has not proved the continued existence of a factual basis for subject matter jurisdiction.

Of course, it is true that when "a defendant challenges the

---

[3]Because we conclude that defendants' offers to compensate Warren for her alleged actual damages did not moot her FDCPA claim, we need not determine whether an offer of attorney's fees "to date" can render such a claim moot.

existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009). As the defendants conceded at oral argument, however, the district court engaged in no jurisdictional fact finding in this case. The defendants would therefore have us make such factual findings in the first instance. This we cannot do. *See Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 575-76 (4th Cir. 1995) ("It is a basic tenet of our legal system that, although appellate courts often review facts found by a judge or jury to ensure that they are not clearly erroneous, they do not make such findings in the first instance.").

Moreover, the defendants can point to no evidentiary record from which any court could determine whether Warren could satisfy this burden. The district court held no hearing to resolve the jurisdictional issue nor has any discovery been taken as to the amount of Warren's actual damages. *See Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (holding that "when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts," and "when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery").

Certainly, had Warren made a specific demand in the amended complaint for actual damages and the defendants offered that amount or more, the offer of judgment would have mooted Warren's action. *See O'Brien*, 575 F.3d at 573 (Rule 68 offer of judgment mooted two counts of plaintiff's complaint when defendants offered "the full amount of claimed damages" for those counts). Similarly, had Warren quantified her alleged damages in response to a discovery request and the defendants offered that amount, her case would be moot. *See Rand*, 926 F.2d at 597-98 (holding indi-

vidual plaintiff's case mooted by defendant's offer for "the full amount by which *answers to interrogatories* assert that [the plaintiff] was injured, plus the costs of the suit" (emphasis added)); *Zimmerman*, 800 F.2d at 388 (same); *see also Abrams*, 719 F.2d at 25-26 (holding Rule 68 offer of judgment mooted case when plaintiffs acknowledged "the amount offered was undoubtedly more than any damages they would individually recover after trial").

But, at this stage of the proceedings, before any evidentiary hearing or judicial fact finding in the district court, we simply cannot hold that Warren could not possibly recover more than $250 if her case proceeded to a jury trial. *See Sibersky v. Borah, Goldstein, P.C.*, 242 F. Supp. 2d 273, 277-78 (S.D.N.Y. 2002) (explaining that, even though defendants offered plaintiff full statutory damages, attorney's fees, costs, and additional $500 to settle FDCPA claim, the court could not, on the basis of a Rule 12(b)(1) motion, determine the existence or amount of actual damages). Accordingly, the first option offered by defendants—payment of $250 in actual damages—did not moot Warren's case.

### B.

The second option offered by the defendants—conditioning the amount of actual damages on the district court's determination—also failed to moot Warren's action. To moot a plaintiff's case, an offer must be unequivocal. *See Simmons*, 634 F.3d at 766 (holding "conditional nature" of settlement offer failed to "render the Plaintiffs' . . . claims moot").

We faced a similar issue last term in *Simmons*, in which a defendant in a Fair Labor Standards Act case offered to settle the litigation for an unspecified amount of damages. There, the defendants offered to "fully" compensate plaintiffs "upon receipt of an affidavit" that calculated the overtime pay at issue and "a statement explaining how the calculation of overtime amounts claimed was done." *Id.* at 760-61. Judge Hamil-

ton carefully explained for the court that the "vagaries inherent in [the] offer of settlement" raised questions about what might result if the defendant challenged the plaintiffs' explanation of its damages calculation. *Id.* at 766.

The offer here, leaving the "amount [of damages to be] determined by the Court upon plaintiff's submission[s]," suffers from the same inherent flaw. Defendants' offer was not unequivocal but "conditional," predicated on what the district court as fact finder might or might not do. *See id.*; *see also Basha v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 454–55 (5th Cir. 2003) (describing as "vague" Rule 68 offer in FDCPA case that left calculation of actual damages to later agreement by attorneys). Further, like the offer in *Simmons*, this option provided Warren no guarantee that the defendants would not offer their own submissions as to damages or challenge the veracity of hers.[4]

Moreover, the defendants' offer deprives Warren of her right to have a jury determine disputes of fact regarding actual damages. The defendants have acknowledged, as they must, that Warren was entitled to have a jury determine her actual, as opposed to statutory, damages. *See* Fed. R. Civ. P. 38 (preserving the "right of trial by jury" in civil actions); 15 U.S.C. § 1692k(a)(1), (2)(A) (providing for actual and statutory damages and limiting a court's discretion to awarding only the statutory damages). Yet, as the defendants would have it, a savvy defendant in an FDCPA case could avoid submitting the contested issue of actual damages to a jury by offering to substitute the district court as fact finder.

The defendants contend that their offer *permitted* a jury trial on actual damages because the district court could have

---

[4]We reject the defendants' argument that Warren's failure to make a settlement demand is to blame for the ambiguity of the offer because "such [a] complaint matters not to a mootness inquiry." *Simmons*, 634 F.3d at 766.

impaneled a jury for that purpose. *See* Fed. R. Civ. P. 39(b) (providing that a "court may, on motion, order a jury trial on any issue for which a jury might have been demanded"). However, such relief would still be conditioned on what the district court in its discretion might or might not do. *Simmons*, 634 F.3d at 766. Again, an offer must be *unequivocal* to moot a plaintiff's case.

In sum, neither option offered by defendants to satisfy Warren's alleged actual damages moots her case.

III.

Having determined that the defendants' Rule 68 offer of judgment did not moot Warren's action, we turn to the question of whether the district court properly dismissed Warren's complaint pursuant to Rule 12(b)(6). We review the district court's grant of a motion to dismiss *de novo*, accepting as true the complaint's factual allegations and drawing all reasonable inferences in favor of the plaintiff. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

As the Supreme Court recently explained, "Congress enacted the FDCPA in 1977 to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010) (internal citation omitted); *see also* 15 U.S.C. § 1692(e). In this appeal, Warren challenges the district court's dismissal of her FDCPA claim as it pertains to the defendants' alleged violations of 15 U.S.C. §§ 1692e(11) and 1692c(a)(2), and further maintains the district court erred in holding that she had to allege the defendants "willfully" violated the Act.

### A.

First, Warren contends that the district court erred in making a blanket holding that she failed to allege a "material violation of" the Act in relation to her allegations under 15 U.S.C. § 1692e(11). That subsection requires debt collectors "to disclose" in their initial and subsequent communications with consumers "that the communication is from a debt collector." *Id.* Warren maintains that the February 2009 phone call violated § 1692e(11).

Generally, § 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e also provides a non-exhaustive list of "conduct" that satisfies this general prohibition. With one exception, that list involves particular types of false or misleading representations from the debt collector. Only the subsection relied on by Warren, § 1692e(11), contemplates a "failure to disclose" certain information, namely "that the communication is from a debt collector."

Although Congress did not expressly require that any violation of § 1692e be material, courts have generally held that violations grounded in "false representations" must rest on material misrepresentations. For example, analyzing an alleged violation of § 1692e(2), which prohibits a "false representation of the character, amount, or legal status of any debt," the Seventh Circuit reasoned that the Act "is designed to provide information that helps consumers to choose intelligently," and thus held that because "[a] statement cannot mislead unless it is material, . . . a false but non-material statement is not actionable." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009); *see also Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009).

Warren's allegations, however, do not involve a *false representation*, or any affirmative representation for that matter. Rather, as described above, Warren complains about conduct that involves a "failure to disclose" "that the communication," the February 2009 phone message, was "from a debt collector." The statute expressly prohibits this exact *omission* by requiring debt collectors to disclose their status in every communication with a consumer. Accordingly, whether a materiality requirement attaches to other violations of § 1692e has no impact on Warren's allegations that the defendants violated § 1692e(11). *Cf. Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 235-36 (4th Cir. 2007) (analyzing alleged § 1692e(11) violation with no discussion of materiality requirement). The district court thus erred in concluding that Warren failed to allege a violation of § 1692e(11).

B.

Warren also contends that the district court erroneously held that she failed to allege that the defendants "knowingly" violated § 1692c(a)(2) of the Act. Section 1692c(a)(2) prohibits a debt collector from "communicat[ing] with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address."

Here, Warren alleges that by letter dated March 7, 2009, she informed the defendants that an attorney represented her, directed the defendants to communicate with her attorney, and provided the defendants with her attorney's name and mailing address. Nevertheless, a week later on March 17, 2009, the defendants sent directly to Warren another letter in connection with the collection of the debt at issue. The letter opened with the phrase, "Thank you for your recent letter concerning this account." Drawing all reasonable inferences in favor of Warren, her allegations adequately state that the defendants, having received Warren's letter, knew she was "represented by an

attorney" and how to contact the attorney when they sent her the March 17 letter. And yet, in violation of § 1692c(a)(2), the defendants communicated not with her attorney, but directly with her. Thus, we can only conclude that the district court erred in concluding Warren failed to allege that the defendants violated § 1692c(a)(2).

C.

Finally, Warren contends that the district court erred by requiring her to allege that the defendants "willfully" violated the Act. The statute itself contains no scienter requirement. Rather, it imposes liability on "any debt collector who fails to comply with any provision" of the Act. 15 U.S.C. § 1692k(a); *see also id.* § 1692k(b) (directing courts to consider whether the "debt collector's noncompliance was intentional" in assessing "the *amount* of liability" (emphasis added)). In other words, as a number of our sister circuits have held, the FDCPA "imposes liability without proof of an intentional violation." *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010); *Donohue*, 592 F.3d at 1030; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010); *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009).

The Act does contain an affirmative defense, however. Under 15 U.S.C. § 1692k(c), a debt collector can escape liability if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Such a "bona fide error" defense is one that a defendant must prove. *See Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir. 2002) (holding that defendant "carries the burden of proving" the "affirmative defense"); *see also Sayyed*, 485 F.3d at 232 (describing § 1692k(c) as "offer[ing] a kind of qualified immunity to debt collectors"). Certainly, the defendants in this case will have

the opportunity to do so on remand. However, the district court turned the defense on its head in this case, requiring the plaintiff to plead and prove that the defendants acted willfully. By doing so, the district court erred.

## IV.

For the foregoing reasons, we hold that the defendants' offer of judgment did not moot the case and that the district court erred in concluding that Warren's amended complaint failed to allege violations of 15 U.S.C. §§ 1692c(a)(2) and 1692e(11). Thus, we reverse the judgment of the district court and remand for further proceedings.[5]

*REVERSED AND REMANDED*

---

[5]In a cross-appeal, the defendants have challenged the district court's dismissal of their motion for sanctions against Warren's attorney. The district court dismissed the motion as moot in light of its dismissal of Warren's complaint. Warren agrees that we should reverse and remand the dismissal of the sanctions motion if she prevails in her appeal. Accordingly, we also reverse and remand the district court's dismissal of the defendants' motion for sanctions.